**UNITED STATES**

v.

**Raul O. GALINATO, 571 75 5635, Fire-man Recruit (E–1), U.S. Navy.**

**NMCM 88 2113.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 24 Feb.1988.

Decided 9 June 1989.

LT. Fredric D. Firestone, JAGC, USNR, Appellate Defense Counsel.

LT. Charles A. Polen, JAGC, USNR, Appellate Government Counsel.

Before RILEY, McLERAN, and MIELCZARSKI, JJ.

MIELCZARSKI, Judge:

Contrary to his pleas, appellant was convicted at a general court-martial of 31 specifications of wrongfully uttering worthless checks, in violation of Article 123a of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 923a. He was sentenced by members to total forfeiture of all pay and allowances, confinement for 15 years, and a dishonorable discharge. The convening authority approved the sentence, but probationally suspended confinement in excess of 8 years. This case presents the hopefully unique issue of whether or not the defense counsels' refusal to defend appellant in an attempt to "veto" a trial judge's ruling has resulted in a denial of effective assistance of counsel to appellant in violation of the Sixth Amendment.[1] We conclude that it has.

---

1. The four assignments of error are:

I

THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING APPELLANT'S MOTION FOR A CONTINUANCE THUS DENYING HIM EFFECTIVE ASSISTANCE OF COUNSEL.

II

COUNSEL'S REPRESENTATION WAS INEFFECTIVE.

III

THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING APPELLANT'S MOTION FOR MISTRIAL.

I

Appellant is a citizen of the Philippines who joined the U.S. Navy in 1983. From April 3, 1986, through May 1, 1986, appellant wrote a series of eight checks for cash totalling $1930.00 at the American Express Bank at Subic Bay which were returned due to insufficient funds in appellant's account. Then from October 22, 1986, through November 8, 1986, appellant wrote a second series of 21 checks for cash totalling $2950.00 at the Navy Exchange at Naval Station, San Diego, each of which was returned for either insufficient funds or because appellant's account was closed. Appellant was tried at a special court-martial convened in San Diego for the second series of bad checks, but not the first, because the prosecution was unaware of their existence at that time. Appellant was convicted of all 21 specifications of making and delivering bad checks to the Navy Exchange and was sentenced by the military judge on June 30, 1987, to a reduction in rate from E–2 to E–1, 90 days confinement and a bad-conduct discharge.

Following his release from the brig, appellant was transferred to the Transient Personnel Unit, Naval Station, Subic Bay on July 27, 1987. From September 10, 1987, through September 25, 1987, appellant wrote yet a third series of bad checks for cash, this time 23 checks totalling $3450.00, all uttered to a Navy Resale Activity at the Naval Station, Subic Bay, called the Far East Trader. Appellant contended, first in a written sworn statement, then at trial in an unsworn but unrebutted statement, that this third series of checks was necessary because he was not at the time receiving any pay nor was he allowed off restriction so that he could work a night job to make money to support his wife and children. The convening authority acted on September 18, 1987, and appellant was placed on appellate leave on October 6, 1987, whereupon he returned to Olongapo City in the Philippines. On November 2, 1987, appellant was recalled from

appellate leave for prosecution of the charge in this case. An investigation by the Naval Investigative Service commenced, appellant confessed in the written sworn statement alluded to above and the first series of bad checks to the American Express Bank was discovered. Appellant began pre-trial confinement on November 6, 1987.

The Charge and 31 specifications covering the first and third series of bad checks were preferred on November 23, 1987; appellant was informed the next day and an Article 32, UCMJ, investigation was held on December 9, 1987. Lieutenant Dennis J. LeBlanc represented appellant at the investigation. Appellant requested civilian counsel and a continuance for this reason was granted until December 18, 1987. Although appellant had not in fact retained civilian counsel, the hearing was held that day without objection and Lieutenant LeBlanc represented appellant. The convening authority referred the charge to a general court-martial on January 13, 1988, and appellant was served with the referred charge the same day.

At an Article 39(a) session[2] on January 22, 1988, appellant requested that Lieutenant Gerald E. Gray be his individual military counsel. The session was terminated at that point with the next session to handle pre-trial motions scheduled for January 28, 1988. At that session, Lieutenant Gray represented appellant and Lieutenant LeBlanc was relieved. Then appellant indicated that he had retained a local civilian lawyer, Mr. Jesus R. Llamado, a member of the Philippines bar, and requested a second continuance so that Mr. Llamado could be present at the motions session. The judge granted the request over the prosecution's opposition. The prosecution, apparently concerned over potential speedy trial problems, requested a new motions date of February 2; the defense countered with 2 weeks; and the judge rescheduled motions for February 11, and the trial on

IV

APPELLANT'S SENTENCE TO FIFTEEN YEARS CONFINEMENT IS EXCESSIVE IN LENGTH AND THEREFORE INAPPROPRIATE.

2. Article 39(a), UCMJ, 10 U.S.C. § 839(a).

the merits on February 16, 1988, thereby granting in full the defense request. Appellant was arraigned before adjournment.

At the February 11 session, appellant was represented by both Lieutenant Gray and Mr. Llamado. The defense then requested yet a third continuance until February 24 in order to have time to prepare for trial. The prosecution, its alarm growing over the lengthening time appellant was serving in pretrial confinement, vigorously objected. Mr. Llamado responded by promising that he would make no further continuance requests, whereupon the judge granted the defense its requested relief again by scheduling motions for February 17, and the trial for February 24.

Two defense motions were in fact litigated on February 17, 1988, and denied. Appellant then pleaded not guilty and requested that enlisted members be included on his court-martial.

On February 24, 1988, the members and prosecution witnesses were standing by when the judge called the court-martial to order. The defense immediately requested yet another continuance on the grounds that the defense was not yet ready and because they were attempting to get the Phiippines to request jurisdiction over the case, in lieu of the U.S. Navy. The prosecution, as it had previously promised in discussions concerning the jurisdiction request, did not join in this continuance request but did not oppose it either. The judge denied this request, ruling that appellant had no standing in the potential waiver of American jurisdiction and that the defense had had ample time to prepare. The defense dropped the jurisdiction leg of its request, but insisted that it was not ready to try the case. The judge reaffirmed his ruling, whereupon both defense counsel utterly ceased to function, taking absolutely no further action in the case other than moving for a mistrial at the close of the prosecution's case on the grounds that they were unprepared to try the case. This motion was denied.

Following the unopposed presentation of the prosecution's case, no defense case and no defense arguments, the members re-turned a guilty verdict on all 31 specifications. The prosecution presented an unopposed aggravation case which included hearsay evidence of uncharged misconduct to the effect that appellant had educated others in his financial skills and had actively encouraged other enlisted persons to do as he had done. The judge earlier had spoken directly to appellant for the first time this day by advising him of his allocution rights. Appellant responded that he did desire to exercise his rights. Then, at the end of the prosecution's aggravation case, he said: "Since my lawyers are not ready today. [sic] They have not done anything for me. But it's my chance to make a statement and I want to, so I will."

Appellant thereafter made a statement amounting to four pages of single-spaced transcript and revealed additional uncharged misconduct, including a captain's mast for an unauthorized absence as well as maintaining two mistresses in addition to his wife and family. The prosecution argued for a dishonorable discharge and 25 years confinement; the defense counsels remained mute. The members sentenced him to a dishonorable discharge and 15 years.

## II

█ "The military judge ... may, for reasonable cause, grant a continuance to any party for such time, and as often, as may appear to be just." Article 40, UCMJ, 10 U.S.C. § 840. The trial judge in this case granted three prior defense continuances, each time giving the defense the full amount of time it requested, the last two times over the prosecution's objections. At the January 28 session, appellant's individual military counsel notified the court that a local civilian counsel, naming Mr. Llamado, had been retained. Although both counsel had 4 weeks in which to prepare to defend appellant, and although they had been able to draft and litigate two motions in this case the preceding week, they ultimately offered no further justification for a continuance other than that they were not prepared. The judge's ruling was well within the limits of his discretion and

he did not commit error in denying either the continuance request or the related motion for a mistrial. *See Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). *See also Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940) (3 days to prepare for a capital case was reasonable); *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (1 month to prepare for an interstate check kiting case by an inexperienced attorney was reasonable).[3]

### III

■ Unfortunately, however, the defense counsels did not respect the judge's ruling and in an astounding show of contempt, tried to force the judge to reverse himself by their unilateral withdrawal from the proceedings, on the apparent pretext that they were not prepared. They did not voir dire the members; challenge any member, even peremptorily; make an opening statement; object to a single prosecution exhibit; cross-examine a single prosecution witness; object to a single prosecution question; present a defense case; participate in preparation of instructions to the members; make closing argument; object to clearly objectionable prosecution aggravation evidence; present any matter in extenuation and mitigation; and, most glaringly, they permitted appellant to make a very damaging and rambling unsworn statement without any apparent coaching or counselling whatsoever.

We commend the military judge for refusing to be intimidated by this outrageous

conduct, and in maintaining his temper and decorum throughout the trial. No defense counsel has at any time for any reason the right to disregard a ruling made by a presiding trial judge. Courts-martial may be adversary proceedings, but they are not anarchical, and any judge's order must be complied with or properly challenged. Pleading an accused not guilty in the trial arena and then suddenly abandoning him as the opposing gladiator approaches, sword upraised,[4] is not compliance with nor a proper challenge of a judge's ruling.

The net result here was to deny appellant any assistance of counsel. "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character *as a confrontation between adversaries,* the constitutional guarantee is violated." *Cronic,* 466 U.S. at 656–7, 104 S.Ct. at 2045–6, 80 L.Ed.2d at 666 (footnotes omitted) (emphasis added). That is why "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice" to the accused. *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984).

The Supreme Court's rationale for the above *per se* rule is that:

> need not be granted where the orderly procedures of the court will be disrupted, continuances for more preparation time than necessary need not be granted." *Id.* at 489 n. 10. It is a rare counsel who feels on the day of trial that more time to perfect the case could not be used. Counsel must, however, be prepared to go once they have been granted a reasonable amount of time to prepare. Failure to do so is both unethical and a dereliction of the counsel's duty to protect and defend the accused's rights.

**3.** The case of *United States v. Burton,* 584 F.2d 485 (D.C.Cir.1978), *cert. den.,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979), contains a good discussion of the interplay of the Sixth Amendment with continuance requests and a non-exhaustive list of factors which a trial court should consider in ruling on defense continuance requests which implicate the Sixth Amendment. The bottom line is that the government, including the courts, should not so rush the accused such that he is not fairly able to exercise his sixth amendment rights. On the other hand, the accused is not allowed to exercise rights to obtain delay of the trial for the sake of delay. "Counsel is not entitled to unlimited preparation time; instead, counsel is entitled to reasonable preparation time. Just as continuances to enable defendants to select counsel

**4.** *Cronic,* 466 U.S. at 657, 104 S.Ct. at 2046, 80 L.Ed.2d at 667 (quoting *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 640 (7th Cir.1975)).

"Prejudice in these circumstances is so likely that case by case inquiry into prejudice is not worth the cost. Moreover, such circumstances involve impairments of the sixth amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent."

*Id.* (citations omitted).

Because of the defense counsels' conduct, this court-martial by any standard was not a "confrontation between adversaries." We are aware that this is not the usual situation where the Government has actually or constructively denied appellant assistance of counsel altogether or interfered with counsel's assistance to the accused, *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696, but the net effect to this appellant is the same—he was not actively represented by counsel. As recognized in *Cronic,* "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." 466 U.S. at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668. Furthermore, the prejudice suffered by appellant in this case is so likely and palpable that it can safely be presumed. In fact, in cases such as this, where there is a complete breakdown of the adversarial process, prejudice would be impossible to assess meaningfully. "Whether a man is innocent cannot be determined from a trial in which, as here, denial of counsel has made it impossible to conclude, with any satisfactory degree of certainty, that the defendant's case was adequately presented." *Betts v. Brady,* 316 U.S. 455, 476, 62 S.Ct. 1252, 1263, 86 L.Ed. 1595, 1609 (1942) (Black, J., dissenting) (quoted with approval in *Cronic,* 466 U.S. at 656 n. 16, 104 S.Ct. at 2045 n.16, 80 L.Ed.2d at 666 n. 16). We hold that appellant in this case has, by virtue of the *per se* presumption of prejudice, suffered a violation of his sixth amendment right to assistance of counsel.

We, like the Court of Military Appeals in *United States v. Hanson,* 24 M.J. 377, 379 (1987), recognize that a tension exists between the sixth amendment right to effective assistance of counsel and the sixth amendment right to counsel of choice.[5] If, however, the two rights should irreconcilably conflict in a case, then the right to counsel of choice must yield to the right of effective assistance of counsel. "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, ——, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140, 148 (1988). Thus a trial judge has discretion in conflict-of-interest cases to deny an accused his counsel of choice in order to guarantee effective assistance of counsel. *Wheat, supra.* We believe that Fireman Recruit Galinato was similarly situated and the trial judge had discretion to remove these defense counsel and recall Lieutenant LeBlanc or order the appointment of different counsel to defend the accused.

We caution against the use of this power in any but extreme cases, such as this. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. On the other hand, the judge has an independent duty to ensure that appellant is tried in accordance with the Constitution. "The duty of the trial court to appoint counsel ... is clear under circumstances such as are disclosed by the record here; and its power to do so, even in the absence of a statute, cannot be questioned." *Powell v. State,* 287 U.S. 45, at 73, 53 S.Ct. 55, at 65, 77 L.Ed. 158, at 172

---

**5.** While a servicemember also has statutory counsel-of-choice rights which are more extensive than his constitutional counsel-of-choice rights, *United States v. Gnibus,* 21 M.J. 1, 8 (C.M.A.1985), these rights may not conflict with the constitutional effective assistance right. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) (the Constitution is the supreme law of the nation).

(1932). "[T]rial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Wheat*, 486 U.S. at ——, 108 S.Ct. at 1698, 100 L.Ed.2d at 150. We note that trial counsel early in the proceedings raised concerns about the effectiveness of representation that appellant was receiving. Even had he not, though, the judge's duty would have remained.

Finally, we are not concerned that our ruling today will embolden other defense counsel to behave similarly. Every defense counsel owes to his client his or her zealousness, competence and diligence. We presume that counsel will conscientiously, ethically and lawfully represent their defense clients to the fullest extent permissible within the context of a supervised adversary proceeding.[6]

Accordingly, the findings and the sentence are set aside, the record of trial is returned to the Judge Advocate General of the Navy for transmittal to a convening authority who may order a rehearing.

Senior Judge RILEY and Judge McLERAN concur.

---

6. If a defense counsel is unprepared, then the counsel may be in violation of Rules 1.1 and 1.3 of the Rules for Professional Conduct promulgated by the Judge Advocate General of the Navy in JAGINST 5803.1 (26 Oct 87), as well as Standard 4–4.1 of the *Standards for Criminal Justice,* 2d Edition, (1979), recognized as "persuasive authority." JAGINST 5803.1, paragraph 6(b).

If a defense counsel falsely claims to be unprepared, then the counsel is in violation of Rules 3.3 and 3.5 of the Rules for Professional Conduct contained in JAGINST 5803.1, as well as Standards 4–1.2(b) and 4–7.1(a) and (d) of the *Standards.*

Even if a civilian defense counsel is the chief counsel, a military counsel is still accountable for his or her own behavior. Rule 5.2(a) of the Rules, *supra.* If the civilian counsel engages in behavior which violates the Rules, *supra,* then the military counsel must follow the procedure contained at JAGINST 5803.1 ¶ 4(c) (October 26, 1987).

Also, in appropriate cases (and we have no occasion to decide today whether the counsels' conduct in this case was a "disorder") the judge does have and may use his contempt powers pursuant to Article 48, UCMJ, 10 U.S.C. § 848, which allows confinement of a contemptuous lawyer for up to 30 days. *But see,* Rule for Courts–Martial 809(a), Discussion.