**UNITED STATES**

v.

**Technical Sergeant Perry L. WASHINGTON, FR 419–76–2556, United States Air Force.**

**ACM 27234.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 18 June 1988.

Decided 2 Aug. 1989.

Appellate Counsel for the Appellant: Martin J. Sendek, Augusta, Georgia; Chuck R. Pardue, Augusta, Georgia; Colonel Richard F. O'Hair and Major Frank J. Spinner.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Morris D. Davis.

Before HODGSON, HOLTE and PRATT, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The appellant was convicted of willfully damaging government property, impeding

a non-judicial punishment proceeding, absence without leave, failing to go to an appointed place of duty, and stealing government documents. Most of these offenses are related to a major fire that extensively damaged the Maxwell Air Force Base, Alabama, legal office on 13 March 1988. The approved sentence is a dishonorable discharge, five years confinement, total forfeitures, and reduction to airman basic.

On appeal the appellant contends that his defense counsel did not adequately represent him at trial, the evidence is insufficient to support a guilty finding of willfully damaging government property and larceny, his court-martial was not properly convened, the damaging government property and impeding a non-judicial proceeding allegations are multiplicious for punishment, and that he was denied a fair trial. While none of the claimed errors justify overturning the appellant's conviction, an extended discussion of some is warranted.

## I

▪ Because persons convicted of crimes are apt to blame their lawyers rather than themselves for their plight, the law presumes that counsel are effective and places the burden of establishing otherwise on an appellant. *United States v. Scott*, 24 M.J. 186 (C.M.A.1987); *United States v. Mansfield*, 24 M.J. 611 (A.F.C.M.R.1987). To rebut this presumption an appellant must identify specific conduct which was unreasonable under acceptable professional standards. *United States v. Scott, supra.*

▪ Appellate defense counsel argue that their client's trial lawyer was deficient in not seeking a psychiatric examination of the appellant when he made a suicide gesture after the trial began. In his affidavit [1] the trial defense counsel pointed out that the appellant underwent a series of mental examinations beginning with an evaluation on 9–11 March 1988. These examinations revealed no mental disorder and the examiners concluded that the appellant was able to participate in his own defense.

On 17 March, trial defense counsel requested a sanity board which was completed on 11 April. The board concluded the appellant had no severe disease or defect, understood the nature of the proceeding against him, and could cooperate in his defense. The defense counsel also stated that a third psychiatric evaluation of the appellant was requested and obtained on 18 May with him being hospitalized on 25 May. This evaluation was completed on 9 June and once again the appellant was determined to be competent to stand trial and free from any disqualifying disease or defect.

On 16 June 1988, the appellant made a suicide gesture by nicking his wrists with a disposable razor. The cuts were superficial and did not require stitches. , The appellant also told medical personnel that he had ingested sleeping pills he obtained while he was in the hospital. There was no evidence that the appellant had in fact swallowed sleeping pills.

At trial the appellant's counsel informed the trial judge that the defense was "satisfied" with the appellant's mental state, and was ready to proceed with trial without requesting an additional sanity board. Appellate defense counsel contend that this statement by trial defense counsel amounted to acting against his client's best interest by "effectively remov[ing] the issue of mental responsibility from the case."

The situation here is not like that in *Mansfield, supra,* where there was *no plausible basis* on which to forgo a sanity defense. Here the appellant had met a sanity board and at least three other mental evaluations, none of which cast doubt on his mental responsibility or his ability to cooperate in his own defense. *Accord United States v. Massey*, 26 M.J. 671 (A.F. C.M.R.1988), *aff'd* 27 M.J. 371 (C.M.A. 1989). The record is clear that the appellant's mental state was thoroughly investigated before and during the trial. Trial defense counsel's decision not to pursue a sanity issue had a "reasoned basis," and thus was well within that wide range of "strategic or tactical decisions made at the

1. The Government's MOTION TO FILE DOC-    UMENT is GRANTED.

trial level" that appellate courts will not disturb. *United States v. Mansfield, supra* at page 617.

Appellate defense counsel also claim that the trial defense counsel failed to make "several suppression motions which would have prevented illegally seized, and damaging information from being introduced against the appellant." They specifically refer to items found in the appellant's car, the result of a search to which he had consented, a search of his house made in compliance with a civilian warrant, and a statement he gave police investigators after a proper advisement of rights. Regarding the lack of a suppression motion as to the search of the appellant's car and house, trial defense counsel avers that he had investigated both situations, interviewed the witnesses and researched the law. In doing so, he found no basis on which to challenge either search. The appellant consented to the search of his car and there is nothing to suggest that his consent to do so was involuntary. The search of his house was pursuant to a search warrant issued by the United States District Court, Middle District of Alabama.

■ While appellate defense counsel maintain the trial defense counsel was negligent in not attempting to suppress the items found in the two searches, they have not alleged any facts or case law that suggest that a suppression motion would have been granted if it had been timely made. Decisions made at trial are evaluated in light of the facts known to the counsel involved. Trial defense counsel states he investigated both searches and determined that a suppression motion on each would be unsuccessful. Indeed, appellate defense counsel do not argue that the motions would have been successful, only that they should have been made. Challenges to evidence are tactical decisions made in the heat of battle, and we will not second guess a trial advocate on his choice of tactics where there is a reasonable basis. Further, we will not fault a defense counsel for declining to make motions which in his judgement have no merit, especially where

there is no evidence to show he was wrong in that assessment.

■ Next, appellate defense counsel contend that the appellant's statement to investigators should have been challenged because "[the appellant] was physically injured as the result of his apprehension and was suffering from smoke inhalation." Here also, trial defense counsel indicated he had investigated the circumstances surrounding the taking of the statement and concluded it was voluntary. Further, the contents of the statement were a complete denial of any wrongdoing, and were consistent with the appellant's testimony at trial. Whether to challenge the admissibility of a statement under these circumstances is a tactical decision within the range of professional judgement. *United States v. Moses*, 26 M.J. 980 (A.F.C.M.R.1988).

■ Finally, appellate defense counsel claims that the trial defense counsel "functioned as an investigative agent for the command and for OSI [Office of Special Investigations] ... [by] hastily delivering potentially incriminating evidence to the government." This allegation is the result of the trial defense counsel giving investigators an anonymous letter he had received absolving the appellant of any responsibility for the recent fires on base. Subsequent investigation suggested that the appellant wrote the letter and had it delivered to his counsel's office.

Appellate defense counsel maintain that the trial defense counsel should have suspected that the appellant wrote the letter, and therefore he was negligent in giving it to the police without first interrogating his client on the matter.

We do not require defense counsel to be clairvoyant in their relationship with a client. Here counsel received a letter tending to establish that his client was innocent of a very serious charge. He gave that information to an agency who could investigate it. If he had done nothing, the claim would be that he possessed exculpatory evidence but did not act on it. Essentially, what we have is an accused who misled his lawyer by giving him a false lead, and who now complains on appeal that his attorney

used that information in an attempt to clear him prior to trial. We will not permit an appellant to benefit by acting in this manner.

## II

■ At 2100 hours on the evening of 13 March 1988, Senior Airman Dewey Hansford saw flames inside the building which houses the base legal office. He went to the quarters of Sergeant Timothy Wills who lived nearby and reported the fire. Both individuals then tried to extinguish the fire. While attempting to gain entry, they saw the appellant coming down the outside stairs. He smelled of fuel i.e., gasoline or JP–4 and was carrying an anti-freeze jug in his right hand. After Hansford identified himself as a security policeman and asked the appellant to stop, the latter began running down the street emptying the jug he was carrying. Hansford and Wills caught the appellant about 500 feet from the fire. In the ensuing struggle the appellant indicated to Wills that a "federal prisoner knocked him out and started the fire."[2] A search of the immediate area uncovered a plastic anti-freeze jug that smelled of fuel and a plastic jug cap. A second cap was found on the appellant. A burnt plastic container that appeared to be an anti-freeze jug was also found inside the burning building. A forensic consultant in arson investigations testified that the fire was deliberately set using a petroleum accelerant as the principal agent.

A search of the appellant's car disclosed a coupon from a container of Prestone antifreeze, a pair of used surgical gloves, and two DD Forms 1569, Security Police Incident and Complaint Report, which concerned the appellant's alleged absence without leave from 20 February until 23 February 1988. The appellant's first sergeant last saw these reports in his office on 11 March 1988. The documents were distinctive because they had coffee and water stains on them. The interior of the car had an odor of fuel.

When questioned by investigators, the appellant denied setting the fire, and indicated he was going to the shoppette to buy cigarettes. On his way there he met a C–141 crew member who traded him a flight suit for two packs of cigarettes. He stopped in front of wing headquarters to light a cigarette when he smelled smoke. Upon entering the building, he saw the fire and tried to put it out but was unable to. As he left the building to get help, he encountered "two drunks," i.e., Hansford and Wills, and heard tires screech which he thought indicated the arsonist attempting to flee. He said nothing to the investigators about a federal prisoner being involved.

Appellant, in his testimony at trial, again denied setting the fire, and stated he entered the building in an attempt to control the fire. He ran from Hansford and Wills because he was scared they would attack him. He said the incident reports found in his car had been left in his hospital room by his first sergeant when the latter visited him.

The appellate defense counsel argue that the evidence just discussed is insufficient to support a conviction for the willful damage to government property and the larceny of government documents. We disagree and find the evidence as to each allegation overwhelming. The appellant was caught leaving a burning building carrying a container of gasoline—when he was asked to stop, he fled while emptying the container. The fire, which was deliberate, severely damaged the legal office where incident reports involving the appellant were filed. The stolen reports were found in his car. His explanation of how they got there was available to the court. *See United States v. Testman* 36 C.M.R. 923 (A.F.B.R.1966), *pet. denied* 36 C.M.R. 541 (C.M.A.1967). The above evidence plus the appellant's denial of any wrongdoing was submitted to the fact finders who rejected his account of the incident. We also are convinced beyond a reasonable doubt of the appellant's guilt as to these two offenses. We are further convinced beyond a reasonable doubt of the appellant's guilt

---

**2.** We take judicial notice that a Federal Prison Camp is located on Maxwell AFB, Alabama.

as to the remaining offenses. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

### III

The remaining assigned errors are resolved against the appellant. Article 25, UCMJ, 10 U.S.C. § 825; R.C.M. 601; *United States v. Doss*, 15 M.J. 409 (C.M.A.1983); *see also United States v. Dumford*, 28 M.J. 836 (A.F.C.M.R.1989). For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

Judges HOLTE and PRATT concur.