**UNITED STATES, Appellee,**

v.

**Specialist Four Ronald A. GRAY, 261–69–7258, United States Army, Appellant.**

**ACMR 8800807.**

U.S. Army Court of Military Review.

12 March 1991.

For Appellant: Captain Michael J. Berrigan, JAGC (argued), Major Michael J. Kelleher, JAGC (on brief).

For Appellee: Captain Jonathan F. Potter, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before NAUGHTON, GRAVELLE, and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT ON PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF MANDAMUS

JOHNSTON, Judge:

In April 1988, the appellant was convicted, contrary to his pleas, of attempted murder, two specifications of premeditated murder, three specifications of rape, larceny, two specifications of robbery, two specifications of sodomy, and burglary in violation of Articles 80, 118, 120, 121, 122, 125, and 129, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 880, 918, 920, 921, 922, 925, and 929 (1982), respectively. His approved sentence includes death, a dishonorable discharge, total forfeitures, and reduction to Private E1.

The appellant has filed a "motion" to order the U.S. Government to provide $15,-000.00 for three purposes: to obtain mental health experts to evaluate the appellant and provide expert assistance to counsel; to retain "qualified" counsel for the appellant's appeal in this death penalty case; and, to retain an investigator to gather facts on the appellant's crimes and his

background. We construe this filing to be a petition for extraordinary relief in the nature of a writ of mandamus. Appellate counsel clarified several issues during an oral argument and in-chambers conference. The petition is denied for the reasons stated below.

■■■ There is no question that this court is empowered to provide extraordinary relief under the provisions of the All Writs Act, 28 U.S.C. § 1651(a), to ensure the integrity of the judicial process. *See Dettinger v. United States,* 7 M.J. 216 (C.M.A. 1979); *United States v. Montesinos,* 28 M.J. 38, 44 n. 3 (C.M.A. 1989). Although the appellant may seek relief in the nature of a writ of mandamus and we clearly have authority to grant relief, mandamus is a drastic remedy and is to be used only in extraordinary circumstances. *United States v. Sherman,* 581 F.2d 1358, 1361 (9th Cir.1978). The burden is on the appellant to show that his right to the writ is clear and indisputable. *United States v. Boe,* 543 F.2d 151, 158 (C.C.P.A.1976).

I

Despite the findings of two sanity boards conducted pursuant to Manual for Courts–Martial, 1984, Rule for Courts–Martial 706 [hereinafter R.C.M. 706], as well as the findings of an independent civilian forensic psychiatrist, the appellant contends that he is entitled to funding for the purpose of retaining mental health experts to assist in evaluating his mental responsibility and mental capacity. It is important to note that appellant did not raise the defense of lack of mental responsibility at trial. Trial defense counsel admitted to the presiding military judge that there was no basis for a sanity issue on the merits. The testimony of two examining psychiatrists was presented as mitigation evidence. None of the psychiatric testimony amounted to a defense.

In response to concerns about the appellant's sanity at the time of the offense and his mental capacity at the time of his court-martial and on appeal, this court ordered another sanity board on 13 February 1990. That board also concluded:

1. No, the appellant did not suffered [sic] from a severe mental disease or defect at the time of the offenses for which he has been convicted.

2. Yes, the appellant was able to appreciate the nature and quality or wrongfullness [sic] of his conduct at the time of the alleged criminal conduct.

....

4. Yes, the appellant has sufficient mental capacity to understand the nature of the court-martial proceedings and to conduct or cooperate intelligently in his defense at the time of the trial.

5. Yes, the appellant presently possesses sufficient mental capacity to understand the nature of the pending appellate proceedings and to conduct or cooperate intelligently in his appeal.

■■■ In the absence of supporting affidavits or cited authority, we disagree with the appellant's contention that certain perceived inadequacies in the examinations, including the alleged failure to account for the possibility of organic brain damage, justify another psychiatric examination or the provision of funds for such an examination.

■■■ The appellant also contends that he is entitled to funding for the purpose of retaining mental health experts to assist in formulating a defense strategy. In an appropriate case, the defense is entitled to the appointment and confidential assistance of an expert consultant either provided or paid for by the government, based upon a demonstration of the need for the services. *See United States v. Garries,* 22 M.J. 288 (C.M.A. 1986). Under the circumstances here, however, counsel has not made a sufficient showing that expert assistance is necessarily required or that the requested expert could provide useful information that the defense cannot obtain through consultation with other appellate defense counsel, the Trial Defense Service, or government psychiatrists located in the National Capitol area. Counsel admitted in oral argument that he has not availed himself of the ample supply of government psychiatrists. Counsel is obligated to inform him-

self about any possible sanity issues and to provide this court with as much information as possible concerning the usefulness of the requested expert so as to specifically define for the court the issues to be developed. *See Moore v. Kemp*, 809 F.2d 702 (11th Cir.1987).

## II

The appellant next contends that funds are necessary to retain death penalty qualified appellate defense counsel to represent him. The appellant urges us to rule that prevailing professional standards for death penalty qualified defense attorneys are established by the 1989 American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases [hereinafter ABA Guidelines].

In order to provide national guidelines on the assignment and performance of counsel in capital cases, the ABA House of Delegates adopted the ABA Guidelines at its 1989 midyear meeting. The ABA recognized that capital trials and appeals are extremely specialized and demanding, and that the appointment of unqualified, inexperienced counsel could be costly in terms of delay and quality of representation. The ABA Guidelines, if applicable to the military, would impose *rigorous* qualifying criteria on counsel selected for defense duties at trial and on appeal in capital cases.

Qualifications of Army appellate defense counsel are governed by statute and regulation. Article 70(a), UCMJ, requires The Judge Advocate General to "detail in his office ... one or more commissioned officers as appellate defense counsel who are qualified under section 827(b)(1) of this title." [1] Article 27(b), UCMJ, specifies that counsel:

(1) must be a judge advocate who is a graduate of an accredited law school or is a member of the bar of a Federal court or of the highest court of a State; or must be a member of the bar of a Federal court or of the highest court of a State; and

(2) must be certified as competent to perform such duties by the Judge Advocate General of the armed force of which he is a member.

█ Army Reg. 27-10, Legal Services: Military Justice, para. 5-8 (22 Dec.1989) [hereinafter AR 27-10], provides, "[u]nless they are clearly inconsistent with the UCMJ, the MCM, and applicable departmental regulations, the American Bar Association *Standards* for Criminal Justice also apply to military judges, counsel, and clerical support personnel of Army courts-martial." (Emphasis added). The appellant maintains that Article 70, UCMJ, when coupled with provisions of AR 27-10, requires that Army appellate defense counsel in capital cases be "qualified" in accordance with the ABA Guidelines. We disagree.

During the ABA Guidelines adoption process, the ABA Standing Committee on Legal Aid and Indigent Defendants incorporated the only substantive concerns expressed by the Criminal Justice Section and changed the nomenclature from "standards" to "Guidelines." While it is clear that many ABA "standards" in criminal justice matters apply to the military, the application of these "Guidelines" is less certain.

█ The ABA Guidelines were not intended to apply automatically to the military legal system. The resolution recommending adoption of the ABA Guidelines by entities providing counsel in death penalty cases was amended to allow for such "exceptions to the Guidelines as may be appropriate in the military." ABA Guidelines at ii. Indeed, the title page of the ABA Guidelines clearly states, "[t]he American Bar Association recommends adoption of these Guidelines, subject to such exceptions as may be appropriate in the military, by entities providing counsel in death penalty cases."

The issue of death penalty qualified appellate counsel has been examined on several occasions by the Court of Military Appeals. Our reading of the 10 May 1990

---

1. 10 U.S.C. § 827(b)(1) is Article 27(b)(1), UCMJ.

interlocutory order in the case of *United States v. Curtis*, 31 M.J. 395 (C.M.A.) (interlocutory order),[2] reveals that the Court of Military Appeals has not specifically addressed the merits of providing funds for counsel qualified in accordance with the ABA Guidelines. Indeed, the Court unanimously determined:

> [U]pon review of numerous requests ... to provide ... counsel for the appellant who is qualified under the guidelines established by the American Bar Association for the appointment and performance of counsel in death penalty cases ... that it is inappropriate at this time to address the merits of any and all such requests....

*Id.* at 395. The funds ordered to be provided in *Curtis* were "to ensure adequate assistance to the appellant and his counsel in the furtherance of this Court's consideration and resolution of this complicated and unique litigation...." *Id.* The Court also stated, "the issuance of this order is in no way intended by the Court to be a determination, either expressly or by implication, of the issue raised by appellant of the adequacy of counsel participating in his defense before this Court." *Id.* at 396.

The recent denials by the Court of Military Appeals of extraordinary writs for "capital qualified" counsel at the trial and appellate level casts further doubt on the application of the ABA Guidelines to military practice. *See Curtis,* 31 M.J. at 397; *Anderson v. Weir,* Dkt. No. 91–01/A (C.M.A. 15 Oct.1990)(order denying without prejudice writ of mandamus for death "qualified" counsel at trial); *Murphy v. The Judge Advocate General of the Army,* USCMA Misc. Dkt. No. 91–11/AR (C.M.A. 18 Jan 1991)(order denying writ of mandamus for death "qualified" counsel to be hired or funded on appeal).

Although the ABA Guidelines do not apply specifically to the military, we are satisfied that the appellant's counsel is "qualified" within the meaning of Articles 27 and 70, UCMJ. Even if the ABA Guidelines apply, the appellant's counsel satisfies those standards as well.

■ The Alternate Procedures specified by the ABA Guidelines for death penalty appeals allow counsel assignments to be made "to persons with extensive criminal trial and/or appellate experience ... if it is clearly demonstrated to the appointing authority that competent representation will be provided to the capitally charged indigent defendant." ABA Guidelines at 8. Lawyers appointed under these Alternate Procedures are required to "meet *one or more* of the following qualifications":

i. Experience in the trial and/or appeal of death penalty cases ...;

ii. Specialized post-graduate training in the defense of persons accused of capital crimes;

iii. The availability of ongoing consultation support from experienced death penalty counsel.

*Id.* (Emphasis added).

We find that the appellant's counsel meets each of these criteria. Counsel has been practicing before this court for approximately fifteen months. He admitted during oral argument that he had worked on an *amicus* brief in the *Curtis* case. He also stated that he had attended a specialized training course designed for counsel in death penalty cases that was sponsored by the NAACP Legal Defense and Educational Fund. He has attended several of the monthly luncheon meetings sponsored by the ABA where speakers address various aspects of death penalty cases. He stated that he has not been denied the opportunity for additional specialized training. We note that the military services' appellate defense counsel involved in capital cases have established an informal "network" to exchange ideas and briefs. In addition, the appellant's counsel has had the opportunity to consult with attorneys representing organizations (*e.g.,* American Civil Liberties

---

2. *Curtis* should be read together with *Curtis v. Stumbaugh,* 31 M.J. 397 (C.M.A.1990)(order denying writ of mandamus for death "qualified" counsel on appeal), and *United States v. Curtis,* 31 M.J. 434 (C.M.A.1990)(order explaining that defense counsel can use the $15,000 for "assistance related to the unique constitutional issues" and for "various forms of other assistance related to aspects of this case").

Union (ACLU), NAACP Legal Defense and Educational Fund, Georgetown University Appellate Practice Clinic, City of New York Bar Association) that have filed *amicus* briefs in prior capital cases. Finally, he has had the daily opportunity to consult with experienced counsel within the Army Defense Appellate Division.

 We are satisfied that the unique nature of Army appellate practice practically assures that Judge Advocate appellate defense counsel will be "qualified" within the meaning of the ABA Guidelines' Alternate Procedures or other specified eligibility criteria. Prudent personnel management by The Judge Advocate General and the Chief, Defense Appellate Division, will ensure that only the most experienced, quality counsel are assigned as lead and co-counsel in death cases, and that counsel within the Division are assisted, supervised, monitored, supported, and managed properly. *See* ABA Guidelines at §§ I: 2.1, 5.1, II: 7.1, 8.1, 11.1.

The quality of representation by Army appellate defense counsel is not affected by an inadequate appellate fee schedule for appointed counsel or the economic constraints of billable hours. They can perform required functions and spend the time necessary on a case without worrying about investing time that will not be compensated. *See id.* at §§ 11.9.2—11.9.5. Army appellate defense counsel also may attend specialized training on a periodic basis at government expense in order to ensure that they are well prepared to tackle capital cases. *See id.* at § 9.1. We will not hesitate to intervene, when requested, if their efforts at attending necessary training courses are hampered.

We are convinced that Army appellate defense counsel stationed in the National Capitol region have unprecedented opportunities to consult with appellate counsel from the other services, with organizations that frequently file *amicus* briefs with the federal courts,[3] and with recognized experts in private practice, concerning the handling of capital cases.

 Counsel urges this court to provide civilian counsel for the purpose of establishing a long-term relationship with the appellant that would last through the entire appeal process. We note that this particular counsel has been on the case for fifteen months. We are satisfied that prudent management of assigned appellate counsel by The Judge Advocate General and the Chief, Defense Appellate Division, will ensure that continuity of representation is maintained.

The appellant's counsel also argues that "pressures" on the Army Defense Appellate Division make it necessary that a civilian attorney be retained in this case. The "pressures" referred to apparently include counsel's current case load and the Division's aim of reducing the case backlog. We applaud him for bringing this issue to our attention. Counsel admitted during oral argument that he personally had not been pressured in any way to compromise the quality of representation he was endeavoring to provide the appellant.

 We expect the Chief, Defense Appellate Division, to manage his personnel so that counsel working on capital cases are not overburdened by other cases. *See* ABA Guidelines at §§ 6.1, 7.1. The quality of representation provided the appellant in this death penalty case is far more important than statistical measures of efficiency in handling other cases. We will intervene, when requested, to ensure that counsel's case load and management pressures do not compromise the quality of capital case representation.

 Finally, we emphasize that our focus in Army death penalty cases will be on the quality of representation provided, rather than the qualifications of counsel as specified in the ABA Guidelines. Just as soldiers who are asked to lay down their lives in battle deserve the very best train-

---

3. Counsel readily admitted during oral argument that the NAACP Legal Defense and Educational Fund has provided him assistance. In our view, counsel has not completely availed himself of these consultation opportunities. We note that several of the *amicus* briefs filed with the Court in *Curtis* are from entities in the Washington, D.C., area.

ing, weapons, and support, those facing the death penalty deserve no less than the very best quality of representation available under our legal system.

### III

The appellant argues that he is entitled to funds in order to retain an investigator because he has neither the time nor the funding to conduct an adequate investigation of the facts and circumstances surrounding the appellant's crimes. The appellant's counsel admitted during oral argument, however, that he had not requested the support of Trial Defense Service personnel stationed throughout the country. In addition, he has not taken any steps to travel at government expense to gather the information. We recognize that counsel may have to spend long hours in a capital case to zealously represent his client. We would be more inclined to view counsel's request with favor if we were convinced that he has done all he can and was frustrated in spite of his best efforts.

Accordingly, the petition for extraordinary relief in the nature of a writ of mandamus directing the government to provide $15,000.00 for expert psychiatric assistance, for an ABA Guidelines' death "qualified" attorney, and for an investigator, is denied.

Senior Judge NAUGHTON and Judge GRAVELLE concur.