UNITED STATES, Appellee,

v.

Joseph L. THOMAS, 376 64 5006, Sergeant U.S. Marine Corps, Appellant.

NMCM No. 891289.

U.S. Navy–Marine Corps Court of Military Review.

Decided 31 May 1991.

Maj. J.B. Gilbert, USMC, Appellate Defense Counsel.

LtCol J.S. Uberman, USMC, Appellate Government Counsel.

Before ALBERTSON, Senior Judge and LANDEN and LAWRENCE, JJ.

ALBERTSON, Senior Judge:

Appellant was tried and convicted by a general court-martial composed of officer and enlisted members of premeditated murder and sentenced to death. The convening authority approved the sentence adjudged. His case has been docketed with this Court but he has yet to submit pleadings to us for our review of his case pursuant to Article 66, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 866.

■ Appellant asks this Court to order the Judge Advocate General of the Navy to provide him with reasonable and necessary funds so that he can hire "death-qualified" appellate defense counsel. Appellant asserts that he is entitled to counsel who meets the qualifications for appellate counsel in capital cases set out in the American Bar Association's (ABA) guidelines [1] for appellate representation of defendants in capital cases. Appellant contends that his appointed appellate defense counsel lacks the recommended qualifications and therefore is not competent to represent appellant in the review and appeal of his conviction and sentence.[2] Simply put, appellant asserts that his Sixth Amendment right to effective representation by counsel on appeal is in jeopardy because his appellate defense counsel, appointed pursuant to Article 70, UCMJ, 10 U.S.C. § 870, cannot provide him adequate appellate representation because he has never litigated a capital case. Appellant bears the heavy burden of overcoming the presumption that his Article 70 appointed appellate counsel is competent.

■ We construe appellant's motion as a petition for extraordinary relief in the nature of a writ of mandamus. See United States v. Gray, 32 M.J. 730 (A.C.M.R.1991) (opinion of the Court on petition for extraordinary relief in the nature of a writ of mandamus). This Court has the authority to grant relief under the All Writs Act, 28 U.S.C. § 1651(a), to ensure the integrity of the judicial process. See United States v. Montesinos, 28 M.J. 38, 44 n. 3 (C.M.A.1989); Dettinger v. United States, 7 M.J. 216 (C.M.A.1979). Mandamus, however, is a drastic remedy, and the appellant has the burden of demonstrating his right to it by clear and indisputable evidence. Will v. United States, 389 U.S. 90, 88 S.Ct.

---

1. Guidelines established by the ABA are models. They are the ABA's opinion of the ideal for which, in this type of case, the criminal justice system should aspire to attain. They are not authoritative nor binding, however. They provide guidelines for counsel to use to help him determine whether he is competent to represent his client adequately. The fact that special qualifications are or are not present with a specific individual does not alone determine the competency of that lawyer. An inexperienced lawyer can be extremely competent whereas a very experienced lawyer may be incompetent. Competency under the law is based upon the particular facts of a case.

2. Appellant has not excused his appointed appellate defense counsel nor has appellate defense counsel requested this Court to withdraw from representation. In fact, appellant asserts that he is merely seeking assistance that he believes is reasonably necessary to enable his appellate defense counsel adequately to represent him. Appellant further asserts that Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), gives him the right to expert assistance to perfect his appeal. That expert assistance is what he terms "death-qualified counsel" within the meaning of the ABA standards.

269, 19 L.Ed.2d 305 (1967); *Gray; Rhea v. Starr*, 26 M.J. 683 (A.F.C.M.R.1988); *Smithee v. Vorbach*, 25 M.J. 561 (C.G.C.M.R.1987).

■ To justify issuance of an extraordinary order, appellant must establish that he clearly and indisputably has the right to have the Judge Advocate General provide him with the requested funds. Were he to make such a showing, he would then, in effect, have us impliedly find that the Judge Advocate General abused his discretion under Article 70, UCMJ, in detailing the present appellate defense counsel. Concomitant with his showing an abuse of discretion, appellant also bears the burden of presenting evidence that establishes clearly and indisputably that such abuse of discretion will deny him adequate representation in the review and appeal of his conviction and sentence.

The Sixth Amendment guarantees an accused the effective assistance of counsel on appeal. *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). But the United States Supreme Court in interpreting that guarantee has not held that the Sixth Amendment requires counsel representing defendants sentenced to death have the qualifications recommended in the ABA guidelines,[3] or any other special qualifications.

■ Articles 66 and 67, UCMJ, 10 U.S.C. § 867, provide for automatic review and appeal of appellant's case. Articles 27(b) and 70, 10 U.S.C. § 827(b) provide the statutory right to counsel during that review and appeal and set forth the qualifications for military appellate counsel. These Articles do not require that appellate defense counsel have special qualifications to represent accused in death penalty cases. No decision of the United States Court of Military Appeals creates such a requirement;[4] indeed, we find no authority within the military justice system indicating that a servicemember convicted of a capital offense must be represented on review or appeal by a lawyer with qualifications other than those specified in Articles 27(b), and 70, UCMJ. *See Gray.* In sum, we find that an accused facing the death penalty has no Sixth Amendment right to be represented by a lawyer with special qualifications, and no *per se* rule exists within the military justice system requiring appointment of appellate defense counsel with special qualifications such as those recommended in the ABA standards.

■ Concluding that the appellant has not established a Sixth Amendment or a statutory right to death-qualified counsel, we turn to the broader concept of effective representation required by military due process. Both the Supreme Court and the Court of Military Appeals have held that the complexity of non-legal data or the collection of information may be so outside the realm of regular legal training or study that the accused's lawyer cannot adequately represent his client unless he obtains expert assistance. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (death penalty case); *United States v. Garries*, 22 M.J. 288 (C.M.A.1986), *cert. denied*, 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1987) (case referred as capital); and *United States v. Allen*, 31 M.J. 572 (N.M.C.M.R. 1990) (espionage case referred non-capital), *inter alia.* When an adequate defense requires expertise, mili-

---

3. The state courts that have recognized that failure to ensure minimum counsel qualifications in capital cases results in fundamental unfairness have based their decisions on the requirements of state statutes. *See Amadeo v. State*, 259 Ga. 469, 384 S.E.2d 181 (1989); *State v. Diddlemeyer*, 296 S.C. 235, 371 S.E.2d 793 (1988).

4. We do not read the Court of Military Appeals orders in *United States v. Curtis*, 31 M.J. 395 (C.M.A.1990) (interlocutory order), *Curtis v. Stumbaugh*, 31 M.J. 397 (C.M.A.1990) (order denying writ of mandamus for death-qualified counsel on appeal), or *United States v. Curtis*, 31 M.J. 434 (C.M.A.1990) (order explaining that appellate defense counsel can use the ordered funds for "assistance related to the unique constitutional issues" and for "various forms of other assistance related to aspects of this case") as precedent for any principle of law. As a matter of fact, the Court rejected any potential interpretation that its order was intended to address the issue of adequacy of counsel because he lacked the qualifications recommended by the ABA guidelines. *Curtis*, 31 M.J. 395.

tary due process requires that the expertise be provided. *Garries.* The defense bears the burden of demonstrating the need for that expertise and that without it an adequate defense cannot be provided. *Id.*

Appellant asserts, without any particularity, that without the expertise of a lawyer possessing experience in litigating death penalty cases at the appellate level, he will not receive an adequate defense. Appellate advocates are measured by the same standard the courts measure trial lawyers, that is, they "must act with the competence reasonably expected of an attorney rendering such legal services." *United States v. Hullum,* 15 M.J. 261, 267 (C.M.A.1983). Paradoxical it is that appellant claims that his appellate counsel requires assistance in the very field in which his counsel's superiors find him competent, appellate representation in cases of serious criminal convictions. *See* Article 70, UCMJ; R.C.M. 1202; Rule 5.2, Rules of Professional Conduct for Judge Advocates (RPC) (JAGINST. 5803.1).

 This paradox points out the limitation of any analogy to the *Ake–Garries* line of cases. Those decisions presume that the request for expert assistance is in a subject or field that is beyond the ken of a competent, diligent attorney who has put forth reasonable effort to recognize, gain the knowledge, comprehend, understand or perceive the subject or field as it relates to the facts and circumstance of his particular case. *See United States v. Stark,* 30 M.J. 328 (C.M.A.1990); *United States v. Allen,* 31 M.J. 572 (N.M.C.M.R.1990). With time and able research [5], however, it is well-settled that a competent lawyer should be able to develop the knowledge and skill necessary to represent a client. If the lawyer believes that despite his diligent efforts he is not competent, he must (1) advise his client; (2) advise his superior, if he has one; (3) associate with another lawyer who is competent; or (4) attempt to withdraw from the case. *See* Rules 1.1 and 1.16, RPC.[6] Of course, he may continue representation with the knowledgeable consent of his client, or be required to continue representation because a superior or a court decided he was competent to continue representation. If appellate counsel's only viable option is to remain on the case and represent the accused, his client has the right to challenge the effectiveness of his representation on further review and appeal. *See Burger v. Kemp,* 483 U.S. 1056, 108 S.Ct. 32, 97 L.Ed.2d 820 (1987); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hullum,* 15 M.J. at 268; Annotation, "When Is Attorney's Representation of Criminal Defendant so Deficient as to Constitute Denial of Federal Constitutional Right to Effective Assistance of Counsel—Supreme Court Cases," 83 L.Ed.2d 1112 (1987). The opportunity for procedural default [7] that concerned ci-

---

5. We too recognize that "there are cases of far-reaching significance to which special time and attention must be given by appellate defense counsel." *Hullum,* 15 M.J. at 266.

6. If a judge advocate has advised his superior of his incompetency and the superior denies him assistance or determines he is competent, the judge advocate may continue to represent his client. On the other hand, if the judge advocate persists in his belief that he is incompetent, he must advise his client who then makes a decision as to whether to retain the judge advocate as his counsel, having been fully advised of the ramifications of such excusal and retention, or he may request the Court's permission to withdraw. If all fails, the judge advocate is required to represent his client to the best of his knowledge and skill.

7. Waiver of issues by counsel due to procedural defaults is the basis for ABA, federal and state

concern that defendants in capital cases have death-qualified counsel. We believe the military justice system's provisions for post-trial review and appellate jurisdiction, as interpreted by current judicial precedent, have a long history of meeting the ABA's concerns and in fact have addressed the following recommendation of the ABA:

> The American Bar Association recommends that procedural default rules not have preclusive effect when the prisoner shows that the failure to raise the claim at the time or in the manner required by state law was the result of the petitioner's or counsel's ignorance or neglect or if the federal Courts' failure to consider such a claim would result in a miscarriage of justice.

For example, Military Rule of Evidence 103(d) clearly provides that "plain errors that materially prejudice substantial rights although they were not brought to the attention of the military

vilian authorities in both state and federal jurisdictions that now have statutes mandating death-qualified counsel in capital cases is significantly less in the military justice system; *see, e.g.,* R.C.M. 903(e), 907(b)(2); Mil.R.Evid. 103, and, when it has occurred, the military appellate courts have addressed it as an ineffective assistance of counsel issue. *See United States v. Brothers,* 30 M.J. 289 (C.M.A.1990); *United States v. Griffith,* 27 M.J. 42 (C.M.A.1988); *United States v. Bono,* 26 M.J. 240 (C.M.A.1988); *United States v. Dorsey,* 30 M.J. 1156 (A.C.M.R.1990); *United States v. Washington,* 29 M.J. 536, (A.F.C.M.R.1989), *pet. denied,* 30 M.J. 38 (C.M.A.1990); *United States v. Galinato,* 28 M.J. 1049 (N.M.C.M.R.1989); *United States v. Whidbee,* 28 M.J. 823 (C.G.C.M.R.1989). Appellate military counsel's chances of being ineffective because he procedurally defaults are considerably less than trial defense counsel's. Even then the appellant is not out of court. Ineffective representation of counsel on the trial or appellate level is an issue that is never waived. *See Hullum.* Thus appellant may still show that appellate counsel's ineffectiveness prejudiced his case under the standards of *Strickland v. Washington,* or because it resulted in an innocent person being convicted. *Hullum; see McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

The complexity and time sensitivity of capital litigation that causes procedural defaults in civilian jurisdictions that would materially prejudice the substantial rights of an appellant are virtually non-existent within the procedurally simplistic military justice system. We have trial, mandatory local post-trial review, mandatory review by the Court of Military Review and the Court of Military Appeals [8] with direct certiorari to the Supreme Court of the United States, the most direct and expeditious appellate procedure of any criminal jurisdiction of which we are aware. Also, appointment of appellate counsel is statutorily mandated unless the appellant waives that right in writing after having been fully advised of the ramifications of such waiver by qualified counsel. Further protection is built into the system because appellate defense counsel appointed to represent the accused is different from and independent of the trial defense counsel. *United States v. Patterson,* 22 U.S.C.M.A. 157, 46 C.M.R. 157 (1973); *United States v. Howard,* 24 M.J. 897, 906 (C.G.C.M.R.1987) (Baum, C.J., concurring). Thus, no issue arises as to any conflict of interest regarding the inability or undesirability of challenging or second-guessing on appeal the trial defense counsel's representation at the trial level. Additionally, this Court has broad powers to review both facts and law. *See United States v. Cole,* 31 M.J. 270, 272 (C.M.A.1990). Pursuant to those broad powers, we review the entire record of trial, whether or not issues are assigned by the appellant and his counsel, and "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact, and determine ... should be approved." Article 66(c), UCMJ. We cannot affirm convictions when error is present that materially prejudices the substantial rights of the accused. Article 59(a), UCMJ.[9]

---

judge" are errors that can be noticed and remedied. Furthermore, Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a), goes beyond mere evidentiary errors and encompasses a remedy for substantive and procedural errors as well.

8. Death penalty cases are automatically reviewed by the Court of Military Appeals. Article 67(b)(1), UCMJ.

9. We do not believe the fact that a Court of Military Review reviews a case with thoroughness means that an accused cannot be prejudiced if an appellate defense counsel fails to raise an issue before the court. Like all courts and conscientious counsel, we to might inadvertently overlook an error. *United States v. Knight,* 15 M.J. 202, 204, n. 4 (C.M.A.1983). We also recognize that the contributions of skillful counsel who champion the appellant's case on appeal are far more likely to have significantly better results than a court's *ex parte* examination of the barren record. *United States v. Hullum,* 15 M.J. at 265. But we also recognize that death penalty cases are rare and, when they do appear, are treated seriously and with a great deal of conscientious and extraordinarily thorough preparation by counsel. As previously stated, ineffective assistance of counsel may always be raised by appellant if that is not done.

This uncomplicated trial, review and appellate system when combined with this Court's statutory authority for broad review, as mandatorily reviewed by the Court of Military Appeals, renders concern for affirmance of a conviction based upon some procedural default caused by incompetent counsel insignificant. We are also certain that the relative simplicity of our system, the liberality of interpretation of the All Writs Act by the military appellate courts, and the high standard required for affirmance, ensure that any accused, let alone one facing the death penalty, who can show prejudice to the extent that he was the victim of a fundamental miscarriage of justice, such as being wrongly convicted or inappropriately sentenced, will obtain the relief he is entitled to under the law. *See McCleskey v. Zant.* The statutory structure of the military justice system provides the military due process required to protect an accused's right to a fair trial, review, and appeal. Nothing more is required. Thus, the exceptional scope of review statutorily mandated for capital cases obviates any real concern that significant issues that have an actual and substantial impact on the validity of the findings or appropriateness of the sentence will escape notice or be denied a meaningful review. We find that military due process does not *per se* require that lawyers with special qualifications be appointed to represent accused in death penalty cases reviewed by this Court; [10] and no compelling reason exists for this Court to establish such a *per se* rule for the Naval Service.

■ Although an appellant has no constitutional, statutory, or *per se* military due process right to counsel with special qualifications at the appellate level, although he may hire such counsel to represent him, we do not rule out the possibility that a particular appellant's case may be so complex or his appointed appellate counsel so inexperienced or so overwhelmed with caseload that an adequate defense cannot be provided without appellate defense counsel associating with another lawyer. In such a situation, we believe military due process requires that an accused be given the opportunity to demonstrate the necessity of the association and the consequences should he not have the advantages of that association. *Garries.* We further find that the appellant has the burden (1) to rebut the presumption that the appellate counsel appointed in accordance with Articles 27 and 70, UCMJ, is qualified and competent to represent him; and (2) to show that association with another lawyer with special experience or training in appellate litigation involving the death penalty is necessary to ensure that appellant receive effective representation before this Court. In other words, he is required to establish clearly the materiality and necessity of that assistance.

■ Nothing in law or regulation prohibits the appellant from requesting his appellate defense counsel's supervisor or, if necessary, the Judge Advocate General to appoint additional counsel to assist his appointed appellate defense counsel. *See United States v. Bell,* 11 U.S.C.M.A. 306, 29 C.M.R. 122 (1960); *Martindale v. Campbell,* 25 M.J. 755 (N.M.C.M.R.1987); *United States v. Claxton,* 25 M.J. 623 (C.G.C.M.R.1987), *aff'd on other grounds,* 32 M.J. 159 (C.M.A.1991). In fact, counsel who is concerned about his competency to represent an accused has an ethical obligation—as appellant's counsel has recog-

---

**10.** We acknowledge that paragraph 6b of JAG-INST 5803.1 instructs that the ABA Standards of Criminal Justice provide persuasive authority for interpreting the Judge Advocate General's Rules of Professional Conduct and that the recently (February 1991) approved Defense Function Standard 4–1.2(c) provides:

Since the death penalty differs from other criminal penalties in its finality, defense counsel in a capital case should respond to this difference by making extraordinary efforts on behalf of the accused. Defense counsel should comply with the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases.

49 Cr.L. 2013 (10 April 1991). The JAG Rules and the ABA Defense Function standard, however, are ethical guidelines that provide an attorney with the insight he should apply to his evaluation of his competency. Major Gilbert, in challenging his own competency, has met his ethical obligations. His ethical obligations do not transform the ethical into the legal.

nized—to notify his superiors of his incompetency. Rule 1.1, RPC.

 In either requesting additional counsel or expert assistance, however, appellant must remember that "invocation of the extraordinary writ power is a last resort, not a first thought." *Rhea v. Starr,* 26 M.J. at 685, citing *De Champlain v. United States,* —— U.S.C.M.A. ——, 46 C.M.R. 1329, 1330 (1973). Without an exhaustion of administrative remedies, such that appellant has a decision by the Judge Advocate General, *see* Rule 1.1, RPC, that he demonstrates is a clear abuse of discretion, we cannot reach the question of whether the appellant has established a clear and indisputable military due process right to that assistance such that we must find that the Judge Advocate General's decision was contrary to statute, settled decisional law, or valid regulation. *See Dettinger; see generally United States v. Berrey,* 28 M.J. 714 (N.M.C.M.R.1989) (discussion of fundamental rights and military due process). Thus, an exhaustion of administrative remedies is required before the issue becomes ripe for judicial judgment.

 Finally, the Court does not ignore appellant's understandable desire for the best appellate representation that our American judicial system can provide. Most persons sentenced to death would choose an appellate defense team composed of the best criminal law professors and practitioners that could be assembled regardless of cost. The fact is that the Constitution, congressional legislation, military judicial decisions, and executive order do not grant to those sentenced to death the best appellate representation that the Government or money can provide. The failure to provide counsel who can present appellate issues that do not matter or whose expertise is concocting procedural delay is not required. An accused is constitutionally guaranteed a fair, but not a perfect, trial. A fair trial entitles him to effective competent counsel, but not the best counsel that can be found, nor does the providing of competent counsel mean that an accused has the right to insurance that

counsel will recognize and raise every conceivable constitutional, statutory, or regulatory claim. *See Murray v. Carrier,* 477 U.S. 478, 487, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986).

 In this context of requesting expert legal assistance for appellate representation by death-qualified counsel, and in light of the previously discussed burden to justify extraordinary relief in such a case, even under the Fifth Amendment and military due process appellant has the burden to establish clearly and beyond dispute that the assistance of death-qualified counsel is necessary to ensure him adequate representation given the particular issues in his case, a burden equal to that to justify extraordinary relief. In appellant's particular case, appellant had to show first that his present appellate defense counsel does not possess, or with hard work cannot develop, the knowledge and skill necessary to become competent so that he can present an adequate defense for appellant on review and appeal. *See* Rule 1.1, Commentary, (Army Pamphlet 27–26, Rules of Professional Conduct for Lawyers; Air Force OTJAGL JA 89–5, Rules of Professional Responsibility; Federal Bar Association Model Rules of Professional Conduct for Federal Lawyers; ABA Model Rules of Professional Responsibility); *see generally,* Rule 1.1, RPC. Even had he shown that his appellate counsel could not become competent, he also had to show that the association he requested required a lawyer with the special qualifications he cited.

Because his assertions are based upon his prediction of counsel's results, establishing the factual particularities, rather than conceptual generalities, to bear his burden is concededly very difficult. He had to present facts and circumstances particular to his appointed appellate counsel or his case that demonstrate that without the association he requests an actual, rather than a conjectural, risk exists that significant issues that would have an impact on the validity of the findings or appropriateness of the sentence will not come before

this Court or be adjudicated by us properly.[11]

 Appellant has fallen far short of meeting the foregoing two-step burden.[12]

No evidence before us suggests that the appointed appellate defense counsel in this case is unable to represent this appellant adequately, and nothing but appellant's assertions of the general complexity of death penalty appellate litigation supports his contention that death-qualified counsel is required in this particular case based on the existing or reasonably anticipated appellate issues presented. We find that appellant has not exhausted his administrative remedies and has not born his burden. Ordinarily, we would now deny the appellant's petition with no further discussion.

 In light of our broad powers, the interests of judicial economy, and in an overabundance of caution in this particular

---

11. Appellate counsel is concededly placed in a difficult position since if he is generally incompetent to represent a client sentenced to death, he is arguably incompetent to identify in this particular case those issues he is unable to discover and present competently. Counsel has, however, consulted other lawyers who are experienced in the litigation of death penalty litigation. One in particular has submitted an amicus brief to this Court describing why he believes appellate counsel is not competent and needs the association of a lawyer more experienced than he. Such consultation, research and hard-work are the means by which appellate counsel must attempt to represent appellant adequately, and, if in his view he cannot do so, the means by which he particularizes the reasons for his inability or inadequacy. By doing so, however, he may very well establish his competency. In appellant's case, the amicus brief identified several areas that experienced counsel would investigate, research and prepare; appellate defense counsel has not shown this Court why he is unable to represent his client in that light. Had his consultation, research and investigation resulted in the identification of issues that he believed he was incompetent to handle, he might then more particularly have explained why he was not competent in those areas and why he could not become competent.

12. Subsequent to appellant's filing of his motion, this Court heard oral argument on the issue for three hours during which the colloquy between counsel and the Court made clear that the Court was concerned that the appellant had not exhausted his administrative remedies. Following oral argument the Court issued a show cause order whereby we directed the appellant to answer questions that we believed would assist us in determining whether appellant had met the *Garries* and *Allen* criteria.

1. How is the expert assistance requested by appellate Defense counsel necessary and material to insure effective representation of appellant? *United States v. Garries,* 22 M.J. 288 (C.M.A.1986) *cert. denied,* 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1987); *United States v. Allen,* 31 M.J. 572 (N.M.C.M.R.1990); *see Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *see also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 90 L.Ed.2d 674 (1984); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987).

2. If the expert assistance requested by appellate Defense counsel is necessary and material to insure his effective representation of appellant, how has appellate Defense counsel exhausted his administrative remedies? In other words, what measures, if any, has appellant taken to obtain adequate assistance from within the Appellate Defense Division, the Judge Advocate General's Corps as a whole, other military services, or through the assistance of the Judge Advocate General of the Navy? If offered, how and why are the Government resources listed above not adequate substitutes for the requested expert assistance? *United States v. Garries,* 22 M.J. 288 (C.M.A.1986), *cert. denied,* 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1987); *United States v. Allen,* 31 M.J. 572 (N.M.C.M.R.1990); *see Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

This Court orally announced the show cause order and permitted counsel for both sides to question the Court as to the meaning of the order. This proceeding lasted approximately 30 minutes and again the Court placed appellant clearly on notice of the administrative remedies he was expected to exhaust, the procedures he might use, the types of facts he might present, and the procedural chain he was expected to follow. The Court also asked the Director, Appellate Defense Division, who was at the counsel table with appellate defense counsel for the proceeding, whether he had provided appellate defense counsel all of the assistance he needed, to which the Director candidly conceded he had not. Appointed counsel has done little to nothing to bring this failure before the Judge Advocate General. We conclude that appointed appellate defense counsel has made a reasoned, tactical decision to present this issue to this Court with the evidence and information he has chosen to present and to let us decide the issue in this posture, preserving any adverse ruling for any further appellate review that may follow.

case,[13] we decided to address the merits of the appellant's petition. Reviewing all of the matters before us, including the amicus brief, we find that appellant has failed to show that his appellate defense counsel has done all that he can do to become competent yet remains incompetent, or that he cannot become competent, or that he cannot associate with counsel competent to represent appellant within his chain of command or his own resources. Even in the absence of the establishment of those facts, we find that appellate counsel has the qualifications to represent appellant effectively. His trial and appellate experience, his training, and overall military justice background provide him with qualifications well within the range of that of most counsel appearing in capital cases in the military services. We suspect that his credentials are generally equal to those of counsel representing clients in many non-military capital cases, including those with statutes requiring special qualifications for representation of capital cases. *See* Philadelphia Pennsylvania Common Pleas Court Rules, Rule 406.2b (Appendix, A13, Amicus Brief). More importantly, we find that his zealous representation of appellant to date[14] shows that he is competent to represent this appellant in the review of this court-martial conviction. He is unquestionably competent to review the record of trial in light of all the statutory and regulatory requirements of the UCMJ and MCM, as well as those portions pertaining to constitutional law and capital cases. As an experienced trial and appellate judge advocate, he can, as he has aptly demonstrated by his well-written and orally argued briefs before this Court, research Supreme Court and federal cases involving the death penalty and determine which issues in this case might have an effect on the findings or sentence. He also has established contacts with those experienced in representing persons facing the death penalty such that he has consulted with more experienced attor-neys. Our initial review of the record reveals no issue that a lawyer with his qualifications cannot research or present before this Court. Major Gilbert, as appointed appellate defense counsel, is all that the Constitution and the UCMJ grant to appellant for appellate representation in his case. We are confident that Major Gilbert can discover and develop any relevant issues that this Court of Military Review should consider in deciding whether the findings and sentence in this case should be affirmed.

Accordingly, it is, by the Court this 31st day of May, 1991

ORDERED:

That the appellant's petition is hereby denied.

Judge LANDEN and Judge LAWRENCE concur.

13. Appellant's case is only the second death penalty case to come before this Court since *United States v. Rojas,* 17 M.J. 154 (C.M.A.1984).

14. The issue presented by the motion we have before us is novel and has taken hard work, insightful research, imagination, and zeal. Litigation of the merits of a capital case at the appellate level involves the same lawyerly attributes.