**UNITED STATES, Appellee,**

v.

**Brian K. GARRIES, Airman First Class, U.S. Air Force, Appellant.**

No. 51769/AF.
ACM 24158.

U.S. Court of Military Appeals.

Aug. 4, 1986.

For Appellant: *Luther C. West, Esq.* (argued); *Colonel Leo L. Sergi* and *Major Conrad C. Baldwin, Jr.* (on brief).

For Appellee: *Captain Joseph S. Kistler* (argued); *Colonel Kenneth R. Rengert* (on brief); *Colonel Andrew J. Adams, Jr.*, and *Major Robert E. Ferencik.*

*Opinion of the Court*

COX, Judge:

The nude body of appellant's pregnant wife, Airman First Class Camille Garries, was discovered on June 15, 1981, in a ditch located in Colorado Springs, Colorado. The victim was in the seventh month of her pregnancy—her death resulted in the asphyxiation of the female fetus. A first degree murder charge was filed against appellant in the El Paso County District Court. The trial court granted a motion to suppress test results of stains found in appellant's car and family quarters at the U.S. Air Force Academy, Colorado Springs. Upon interlocutory appeal by the prosecution, the trial court's ruling was affirmed by the Colorado Supreme Court. *People v. Garries*, 645 P.2d 1306 (Colo.1982). The

prosecution then filed a motion for an order of *Nolle Prosequi*, which was granted.

The military assumed investigation of the case and preferred a charge of premeditated murder. The Article 32, 10 U.S.C. § 832 [1] investigation was conducted on September 2 and 3, 1982. The charge was referred as capital and trial by general court-martial commenced on January 10, 1983.

Contrary to his pleas, appellant was convicted by a panel of officer members of premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. The sentence to confinement for life, total forfeitures, reduction to E–1, and a dishonorable discharge was approved by the convening authority. The Court of Military Review affirmed. 19 M.J. 845 (1985).

This Court granted review of two issues:

I

WHETHER APPELLANT WAS IMPROPERLY DENIED INDEPENDENT INVESTIGATIVE ASSISTANCE.

Approximately 6 weeks before trial, detailed defense counsel made a written request to the convening authority for $1,500.00 with which to obtain an "independent defense investigator." This request was denied. At the first session of trial, the request for funding of a defense investigator was renewed. The military judge elicited from defense counsel that the defense had been provided with all the investigative reports prepared by civilian authorities, as well as the Air Force Office of Special Investigations (OSI) and the Article 32 Investigating Officer. Also, the defense had been offered the services of an Air Force investigator who would work under an order of confidentiality. The defense's refusal of this offer was reiterated at trial.

Defense counsel refused to particularize in open court the need for the requested sum of $1,500.00, asking for an *ex parte* hearing. The military judge denied the

request for the $1,500.00, as well as the request for an *ex parte* hearing. The defense then requested a continuance of 3 months so appellant could save $1,500.00. This request was also denied.

Although the purpose was not revealed at trial, it became apparent after trial that defense counsel requested the $1,500.00 to pay for the release of an investigative report that had already been prepared by a private investigator hired by appellant's attorney in the state court proceedings. The defense did not know what the report contained until after trial, when the civilian attorney who represented appellant posttrial obtained the investigation.

■ Appellant contends that the military judge erred in two respects: by ruling on his request for investigative assistance without first conducting an *ex parte* hearing as provided in 18 U.S.C. § 3006A(e) and by denying his request for investigative assistance. We disagree. The provisions of 18 U.S.C. § 3006A concern representation of indigent defendants in federal district courts and are inapplicable to the military. *United States v. Johnson*, 22 U.S.C.M.A. 424, 47 C.M.R. 402 (1973); *Hutson v. United States*, 19 U.S.C.M.A. 437, 42 C.M.R. 39 (1970).

■ Nevertheless, as a matter of military due process, servicemembers are entitled to investigative or other expert assistance when necessary for an adequate defense, without regard to indigency. *Cf. United States v. Mustafa*, 22 M.J. 165 (C.M.A.1986) (accused entitled to access to qualified psychiatrist for purpose of presenting insanity defense); *United States v. Toledo*, 15 M.J. 255 (C.M.A.1983) (accused entitled to transcript of witness' prior testimony). Unlike the civilian defendant, however, the military accused has the resources of the Government at his disposal. *See* Art. 46, UCMJ, 10 U.S.C. § 846; para. 116, Manual for Courts-Martial, United States, 1969 (Revised edition); R.C.M. 703(d), Manual for Courts-Martial, United States, 1984. In the usual case, the

1. Uniform Code of Military Justice, 10 U.S.C. § 832.

investigative, medical, and other expert services available in the military are sufficient to permit the defense to adequately prepare for trial.

■ When an accused applies for the employment of an expert, he must demonstrate the necessity for the services. *See Ake v. Oklahoma,* 470 U.S. 53, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *United States v. Johnson, supra;* para. 116, Manual, 1969, *supra;*R.C.M. 703(d). In this case, the defense refused to make a showing of necessity on the record. Furthermore, the offer to trial defense counsel of the services of an Air Force investigator who would work under an order of confidentiality may have been a viable alternative to requiring the convening authority to fund a private investigator. *Cf. United States v. Simmons,* 44 C.M.R. 804, 811 (A.C.M.R.1971), *pet. denied,* 21 U.S.C.M.A. 628, 44 C.M.R. 940 (1972) (CID not obligated to investigate for defense); *Marshall v. United States,* 423 F.2d 1315, 1319 (10th Cir.1970) (designation of FBI to investigate for defense poses conflict-of-interest dilemma).

Appellant had been provided with the voluminous reports of investigation conducted by civilian authorities, by the OSI, and by the Article 32 Investigating Officer. Because appellant's request for funds to obtain investigative services did not explain why an investigator was needed, what the investigator would do, and why appellant's two detailed defense counsel and their staff could not perform any additional investigative work needed, the military judge did not abuse his discretion in denying the request. *See United States v. Goodwin,* 770 F.2d 631 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986); *United States v. Davis,* 582 F.2d 947 (5th Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979);*United States v. Harris,* 542 F.2d 1283 (7th Cir. 1976); *United States v. Mundt,* 508 F.2d

904 (10th Cir.1974), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975).

Appellant contends that the military judge's refusal to grant an *ex parte* hearing precluded him from establishing the necessity for independent investigative services without revealing defense tactics to the prosecution.[2] Even now, however, appellant's only explanation of why an investigator was necessary is the generalization that the case was referred as capital. It is apparent that the defense was not seeking further investigation, but payment for a report, contents unknown, that had already been prepared without prior authorization. In the absence of previous authorization for an expert, the Manual specifically provides that payment will be made for "ordinary witness fees" only.[3] Therefore, it is difficult to visualize how the defense would have benefited from imparting its true purpose for the $1,500.00 at an *ex parte* hearing.

■ Although appellant has provided no authority for the use of *ex parte* proceedings in the military, we recognize inherent authority in the military judge to permit such a procedure in the unusual circumstance where it is necessary to insure a fair trial. By its very nature, however, an *ex parte* proceeding may provide undue advantage to one party. *Cf. United States v. Wilkerson,* 1 M.J. 56, 57 n. 1 (C.M.A.1975). Use of an *ex parte* hearing to obtain expert services would rarely be appropriate in the military context because funding must be provided by the convening authority and such a procedure would deprive the Government of the opportunity to consider and arrange alternatives for the requested expert services. *See United States v. Vietor,* 10 M.J. 69, 77–78 (C.M.A. 1980) (Everett, C.J., concurring in the result).

■ In any event, the sought-after investigative report was obtained after trial and discussed in the petition for new trial and

---

2. An *ex parte* proceeding is one requested by one party without notice to or presence of the opposing party.

3. *See* para. 116, Manual for Courts-Martial, United States, 1969 (Revised edition); R.C.M. 703(d), Manual for Courts-Martial, United States, 1984.

in allegations of ineffective assistance of counsel. We are convinced that appellant was not prejudiced in preparing his defense by the lack of this report.

## II

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO GRANT THE DEFENSE MOTION TO SUP-PRESS BLOOD STAIN EVIDENCE WHICH WAS CONSUMED BY THE GOVERNMENT IN TESTING BE-FORE TRIAL WITHOUT ANY PRO-CEDURAL SAFEGUARDS TO IN-SURE INDEPENDENT DEFENSE TESTING OR VERIFICATION.

At his court-martial, as he did at his trial in state court, appellant sought to suppress results of laboratory tests performed on stains found in his on-base quarters and in his car. The stains were consumed in rou-tine testing conducted at the Federal Bu-reau of Investigation (FBI) laboratory. Mr. Roy Tubergen, the forensic serologist who performed the testing, testified that one trunk liner was stained with human blood, identified as type B, enzyme PGM 2–1.[4] The other stains were also found to be human blood, but the stains were of insufficient size to permit grouping by blood type.

█ Under prevailing Colorado law, the evidence was ruled inadmissible because the samples were destroyed in testing for the prosecution without any measures be-ing taken to permit appellant's expert to be present or to verify the results. 645 P.2d at 1308. That state court ruling does not bind the Government in this case because the United States was not a party to that proceeding. *Cf. United States v. Fuentes*, 18 M.J. 41, 51 (C.M.A.1984) (findings in one trial not binding in another where parties are different).

█ We believe this case is controlled by *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), made applicable to the military by *United States v. Kern*, 22 M.J. 49 (C.M.A.1986). In *Trombetta*, the Supreme Court held that breath-analysis tests are admissible in crim-inal trials even though the state fails to preserve the breath samples of suspected drunk drivers for independent defense test-ing. The constitutional and military-due-process duty to preserve evidence is limited to that which, (1) "possess[es] an exculpato-ry value that was apparent before" it "was destroyed, and" (2) is "of such a nature that the" accused "would be unable to ob-tain comparable evidence by other reason-ably available means." 467 U.S. at 489, 104 S.Ct. at 2534; 22 M.J. at 51. The accused has the burden of showing that evidence which "is not 'apparently exculpa-tory'" was of "an exculpatory value that was or should have been apparent to the Government before it was ... destroyed and" that "comparable evidence" is una-vailable. *United States v. Kern, supra* at 51–52. Appellant has not met that burden here.

█ First, as in *Trombetta*, there was no hint of bad faith on the part of the Government. In fact, the military judge found no evidence of negligence, bad faith, or misconduct on the part of the laboratory personnel. Second, appellant had other means available to attack the test results. The forensic serologist who conducted the tests testified and was available for full cross-examination. The defense was free to challenge the test results by attacking the reliability of the testing procedures and the competence and credibility of the test-ing official through cross-examination and through testimony of its own expert. Fi-nally, there is no indication that the stains were "apparently exculpatory" before they were consumed in testing or that preserva-tion of the stains would have benefited the defense.[5] The defense expert conceded the

---

**4.** The victim had group B, enzyme type PGM 2–1 blood.

**5.** Prosecution exhibit 8, one of the stair treads, was found to contain "human blood" with "in-

conclusive" group B indications by the FBI test-ing. At the time of trial, still remaining on the exhibit were several "very suspicious" stains which the defense expert testified would lead him to test further "for the presence of blood."

scientific validity of the tests and did not challenge the decision to conduct these tests rather than others.

 Under Article 46, the defense is entitled to equal access to all evidence, whether or not it is apparently exculpatory. *United States v. Kern, supra.* Thus, the better practice is to inform the accused when testing may consume the only available samples and permit the defense an opportunity to have a representative present. Under the circumstances of this case, however, we find no prejudice.[6] Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.

---

Although this exhibit was available for further testing, the defense apparently did not have it tested by its expert. Thus, it appears that appellant may not have been totally deprived of the opportunity for independent testing.

6. If the testing had been done by the military or at its request, a different result might be required. In that situation, it would be difficult to excuse the failure to provide notice to the defense.