# UNITED STATES

### v.

### Jeffrey M. HUERTA, 568 33 4067, Mess Management Specialist Third Class (E-4), U.S. Navy.

### NMCM 89 1887.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 13 Dec. 1988.

Decided 20 July 1990.

LT Jacob R. Walker, JAGC, USNR, Appellate Defense Counsel.

LT John J. Mulrooney II, JAGC, USNR, Appellate Government Counsel.

Before ALBERTSON, JONES and HILTON, JJ.

PER CURIAM:

Contrary to his pleas, appellant was convicted by officer and enlisted members of involuntary manslaughter, a violation of Uniform Code of Military Justice (UCMJ), Article 119, 10 U.S.C. § 912. His sentence of three years confinement, forfeitures of $400.00 pay per month for 36 months, reduction to pay grade E–1, and a dishonorable discharge was approved by the convening authority.

On appeal, appellant contends (1) that the evidence of record is insufficient to prove his guilt of manslaughter of Christopher B., a 4–month old child; (2) that the military judge abused his discretion by allowing five government witnesses to testify cumulatively, resulting in an unfair trial by "prosecutorial overkill;" and (3) that the convening authority improperly denied appellant's pretrial request for expert assistance for improper reasons, violating Article 46, UCMJ, 10 U.S.C. § 846, thereby denying appellant a fair trial, and thus mandating reversal of the findings and sentence in this case. We shall discuss issues (2) and (3), as they are interrelated.

Appellant's wife served as a babysitter for Christopher, who was the son of another Navy couple. On the day in question, she left for the store, leaving appellant, who was not working that day, alone with their own child and Christopher. Within the next 45 minutes, Petty Officer Huerta called the 911 emergency assistance number, stating that Christopher was choking, not breathing, and turning blue. Petty Officer Huerta, assisted by directions given over the phone, administered cardio-pulmonary resuscitation (CPR) until the paramedics arrived. Christopher was then taken to Whidbey General Hospital, and then airlifted to Seattle while in a comatose condition. His condition deteriorated, and 12 days later Christopher died.

Christopher died of head injuries, which included bleeding between the brain and the membranes covering the brain, and the swelling of the brain. These injuries caused the loss of brain cells due to lack of oxygen, leading to total collapse of his brain functions, resulting in coma and death.

Appellant claims these injuries occurred accidentally, as a result of his picking up Christopher out of his crib while the child was choking on a bottle and his subsequent administering of CPR to the infant. He claims that the resulting prolonged state of hypoxia caused veins in Christopher's head to breach, thereby accounting for the internal hemorrhaging, swelling, and subsequent brain disfunction. On the other hand, the Government's evidence included the testimony of five doctors who attended Christopher during the course of his hospitalization. Each testified that Christopher's death resulted from injuries associated with "shaken baby syndrome," which is caused by the violent shaking of an infant or the striking of an infant's head with sufficient force on an object, such as a mattress or padded crib support, causing the brain to strike the inside of the skull. Only such violent shaking or blunt object force, opined each of these doctors, could cause the cranial hemorrhaging, rapid skull swelling, and retinal bleeding suffered by Christopher, particularly within the time frame during which these injuries must have occurred and were observed. Appellant was alone with Christopher at the time these injuries were suffered. By all accounts, Christopher was healthy prior to the time he was left alone with appellant, and Christopher could not have inflicted these injuries upon himself.

Appellant argues that he was denied a fair trial because expert assistance was improperly denied to him by the convening authority prior to the referral of charges in this case. The medical evidence, he asserts, was so complex that for him to receive competent attorney representation required that expert assistance be made available prior to the Article 32, UCMJ, investigation of this charge. The results of trial are an injustice, he claims, because the Government had more than six months to develop the testimony and avail itself of the assistance of the doctors who both

treated Christopher and provided expert opinions favorable to the Government at trial. That testimony, he insists, was cumulative and amounted to prosecutorial overkill, its admission being unduly prejudicial and an abuse of discretion by the trial judge. He was convicted, he contends, not due to the clarity or strength of the evidence against him, but because the Government repeatedly asserted the same evidence against him, against which he could counter with only the testimony of a single expert witness, an Army pediatric neurologist, Lieutenant Colonel McCarty, whom he obtained shortly before trial.

Prior to trial appellant made two separate requests of the convening authority to fund the services of two out-of-area doctors as expert assistants. The convening authority denied the request on the grounds that appellant had not demonstrated how they would assist the defense, and because appellant had not investigated and used the resources of the Government to provide the expert assistance he needed. At trial, the defense renewed its request for expert assistance and the military judge ordered the Government to supply an expert to assist the defense. This request for assistance was granted 13 days prior to the taking of evidence in the case, and the Government-appointed expert assistant, CDR Heye, a pediatrician, began assisting the defense three days after his being made available. CDR Heye located and consulted with LTC McCarty, who became a most convincing defense expert witness at trial. LTC McCarty testified that although Christopher suffered from some of those injuries commonly associated with "shaken-baby syndrome," the nature and extent of his injuries indicated that some less violent forms of trauma than that generally acknowledged as necessary in "shaken-baby syndrome" cases were responsible. He stated that the choking and subsequent hypoxia could have caused the injuries and that homicide should not be inferred simply because of the nature and extent of the infant's injuries. In other words, appellant's request for expert assistance, granted by the military judge and complied with by the Government, led to the expert testimony that formed the basis for appellant's defense at trial.

■ The Government correctly contends that the defense is not entitled to experts of its own choosing at Government expense, *United States v. Hagen*, 25 M.J. 78 (C.M.A.1987), and that in the usual case, the investigative and medical resources of the Government provide sufficient expert assistance to enable an accused to prepare for trial. *United States v. Garries*, 22 M.J. 288 (C.M.A.1986), *cert. denied*, 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986). Here, where the pretrial defense requests for expert assistance were not sufficiently specific as to why the expert assistance was required and why only the named experts could render it, the convening authority properly denied those requests. *See United States v. Mann*, 30 M.J. 639 (NMCMR 1990); *United States v. Fontenot*, 26 M.J. 559 (ACMR 1988); *United States v. Kinsler*, 24 M.J. 855 (ACMR 1987). Further, prior to trial on the merits, the trial judge ordered exactly the assistance requested by the defense, in a timely fashion, and the assistance was both useful and effective in preparing and presenting appellant's case. That appellant did not receive such assistance sooner is of no consequence here, as he suffered no prejudice,[1] particularly when we consider that no

---

1. To obtain expert assistance prior to the referral of charges to a court-martial, we believe that although it may be cumbersome, defense counsel, at a minimum, must demonstrate to the convening authority that (1) working through their own resources, they have exhausted the possibilities for Government assistance within their particular geographic location, (2) establish that their further communication with a potential Government expert assistant would necessarily compromise client confidences, and (3) formally request of the convening authority, with the proper showing of necessity and relevance, that the expert assistance provided be rendered under an order of confidentiality. Once charges have been referred to trial, application for expert assistance may be made to the military judge, followed by a defense-requested continuance to prepare for trial with that assistance. In the event that the convening authority rejects the espoused need for expert assistance prior to trial the written record created in attempting to secure that assistance may provide a basis for relief upon review.

continuance for want of preparation time was requested by the defense during or prior to the trial, and at no time did the defense make clear to the military judge any dissatisfaction with the expert assistance provided to them.

■ Finally, we do not agree with appellant's claims of abuse of discretion in allowing five civilian doctors to testify for the Government. Appellant claims it was "prosecutorial overkill" for each of these doctors to provide expert assistance to the prosecution, and that their testimony was cumulative and therefore unnecessary and unduly prejudicial, particularly where the defense presented the testimony of but one expert. These physicians, however, either treated or, in the case of one, performed the autopsy on Christopher, from the time of his injuries to the post-mortem. Each had different expertise, and each was properly allowed to testify as to his or her opinions and the actions each took concerning Christopher's injuries, treatment, or autopsy.[2]

Appellant received effective representation and a fair trial, and no error materially prejudicial to his substantial rights was committed. We are convinced of his guilt beyond a reasonable doubt. The findings of guilty and the sentence as approved on review below are affirmed.

---

**2.** The weakness of appellant's position is that it fails to account for the distinction between witnesses who qualify as experts at trial and testify concerning their actions and opinions concerning what they observed first hand, and experts who are used in preparing for trial and whose testimony concerns not what they personally observed or did, but simply provides an expert opinion predicated upon the actions of others. Appellant's argument concerning cumulative-ness might be well-founded in a case where the five witnesses testify not as to what they observed or did first-hand, but rather interpret the evidence as reported by others. In such a case, which this one is not, we might well find the testimony of the experts to be "prosecutorial overkill" and find the admission of such cumulative testimony to constitute an abuse of discretion.